**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELECTRIC POWER SUPPLY ASS'N, *et al.*, <br><br>　　Plaintiffs, <br><br>　　v. <br><br>ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, *et al.*, <br><br>　　Defendants. | Case No. 17-cv-01164 <br><br> Judge Manish Shah <br><br> Magistrate Judge Susan Cox |
| VILLAGE OF OLD MILL CREEK, *et al.*, <br><br>　　Plaintiffs, <br><br>　　v. <br><br>ANTHONY M. STAR, in his official capacity as Director of the Illinois Power Agency, <br><br>　　Defendant. | Case No. 17-cv-01163 <br><br> Judge Manish Shah <br><br> Magistrate Judge Susan Cox |

**STATE DEFENDANTS' MEMORANDUM CONCERNING**
**SECOND CIRCUIT DECISION IN *ALLCO FINANCE LTD. V. KLEE***

Thomas Ioppolo
tioppolo@atg.state.il.us
Assistant Attorney General
100 W. Randolph St., 11th Floor
Chicago, IL 60601
(312) 814-7198

Richard S. Huszagh
rhuszagh@atg.state.il.us
Assistant Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
(312) 814-2587

**I.      Introduction**

The Second Circuit's recent decision in *Allco Finance Ltd. v. Klee*, 2017 WL 2782856 (2d Cir., June 28, 2017) ("*Allco*"), significantly confirms the State Defendants' positions regarding Plaintiffs' preemption and Dormant Commerce Clause claims. In particular, *Allco* holds that:

- Field preemption under the Federal Power Act (the "FPA"), as explained in *Hughes v. Talen Energy Marketing, LLC*, 136 S. Ct. 1288 (2016), is limited to state laws that set rates for wholesale sales of electric power or capacity in interstate commerce, not state laws that have only incidental effects on such rates or that govern transactions in separate state-created property rights, like RECs; and

- State laws affecting interstate commerce do not violate the Dormant Commerce Clause if they validly distinguish between different products, which may reflect differences established by a state law that serves the State's "legitimate interest in promoting increased production of renewable power generation in the region," and if any burden on interstate commerce is not clearly excessive in relation to the local benefits.

**II.      Summary of Facts and Claims in *Allco***

The plaintiff in *Allco*, a provider of solar energy with facilities in New York and Georgia, submitted unsuccessful bids to participate in Connecticut programs that authorized state agencies to solicit proposals for renewable energy, select winners, and direct the State's utilities to enter into long-term bilateral contracts with the winners "for energy, capacity and environmental attributes, or any combination thereof." *Allco*, *4. The plaintiff sued, alleging that the program was preempted by the FPA to the extent it did not fit within the authority granted by the Public Utility Regulatory Policies Act, Pub. L. No. 95–617 (1978), and was invalid under the Dormant Commerce Clause.

**II.      *Allco*'s Treatment of Preemption Under the FPA.**

Affirming dismissal of the plaintiff's preemption claim, the Second Circuit rejected the contentions that the Connecticut program invaded FERC's exclusive authority to regulate interstate sales of wholesale electricity. And it did so even though the program differs from the Illinois ZEC program by authorizing the State's agencies to direct utilities to enter into contracts with renewable

power generators for the purchase of electric power and capacity, not just the environmental attributes of renewable power. See *Allco*, *3 (observing that challenged program "aims to encourage the creation of new bilateral wholesale energy contracts between LSEs and generators").[1]

Significantly, the Second Circuit held that *Hughes* did not have the broad scope the plaintiff attributed to it and that, in light of the State's reserved authority recognized by the FPA, FERC's exclusive jurisdiction over wholesale sales of interstate power did not extend to the contracts authorized under the challenged program. The court emphasized that the Maryland laws invalidated in *Hughes* required the affected generators to sell their capacity into the RTO auction, but then replaced the auction price for those sales with the price specified in the statutorily mandated "contracts for differences." *Id.*, *11. The contracts provided for in the Connecticut program, by contrast, took the form of "traditional bilateral contracts" that operated outside the RTO auctions and did not "require bids that are '[]tethered to a generator's wholesale market participation' or that 'condition[] payment of funds on capacity clearing the auction.'" *Id.*, *14 (quoting *Hughes*, 136 S. Ct. at 1299); see also *id.*, *12 ("While Maryland sought essentially to override the terms set by the FERC-approved PJM auction, and required transfer of ownership through the FERC-approved auction, Connecticut's program does not condition capacity transfers on any such auction.").

Rejecting the plaintiff's additional argument that the Connecticut program was preempted because it would have an indirect effect on wholesale prices — by "increas[ing] the supply of electricity available to Connecticut utilities" and placing a "downward pressure" on the prices the plaintiff would receive, which "will have an effect on *wholesale* prices," *id.*, *13-14, emphasis in original) — *Allco* held: "This incidental effect on wholesale prices does not, however, amount to

---

[1] That difference was relevant to *Allco*'s analysis of the preemption-related argument that the program allowed the defendant agencies "to 'compel' and 'force' utilities to enter into contracts with specified generators at specified rates." *Id.*, *10. That argument is inapplicable here because Illinois' ZEC program requires utilities to enter into contracts to purchase ZECs, not electric power or capacity.

2

a regulation of the interstate wholesale electricity market that infringes on FERC's jurisdiction." *Id.*, *14 (citing *Hughes*, 136 S. Ct. at 1298). That reasoning applies equally here.

### III. *Allco*'s Analysis of Dormant Commerce Clause Claim Against REC Program.

*Allco* also supports dismissal of Plaintiffs' Dormant Commerce Clause claims, which allege that Illinois' ZEC program impermissibly favors in-state producers of nuclear energy to the disadvantage of out-of-state energy producers who compete in the interstate wholesale market. Doc. 83 at 36.[2] *Allco* rejected a similar claim based on the inability of the plaintiff's renewable energy facility in Georgia to participate in the Connecticut program. The Second Circuit, relying on *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), and *Wheelabrator Lisbon, Inc. v. Connecticut Department of Public Utility Control*, 531 F.3d 183 (2d Cir. 2008), held that there was no discrimination between similar products. In particular, the court recognized that RECs are a species of property created and defined by state law, and it accepted the State's definition of program-eligible RECs based on certain regional criteria in order to facilitate the transfer of RECs within the same regional power system and to advance the State's "legitimate interest in promoting increased production of renewable power generation in the region, thereby protecting its citizens' health, safety, and reliable access to power." *Allco*, *18. For similar reasons, the court, applying the *Pike* test, concluded that any burden on interstate commerce was not clearly excessive in relation to the local benefits. *Id.* Similar considerations defeat Plaintiffs' efforts to have the Court disregard the distinction between ZECs, as a state-created property right, and electricity produced by power-generating facilities that lack the same environmental attributes. They likewise defeat Plaintiffs' attempt, in connection with the *Pike* balancing test, to ignore the environmental benefits of ZEC-generating nuclear power plants.

---

[2] As noted earlier, no corporate plaintiff operates a nuclear power plant in the PJM or MISO grid areas. Although EPSA has one member that does, it brought this action solely "as an organization" and does not represent "any particular member with respect to any issue." (Doc. 1 at 7, n.3.)

3

                                               Respectfully submitted,

                                               /s/ *Richard S. Huszagh*

Thomas Ioppolo                                 Richard S. Huszagh
*tioppolo@atg.state.il.us*                  *rhuszagh@atg.state.il.us*
Assistant Attorney General             Assistant Attorney General
100 W. Randolph St., 11th Floor        100 W. Randolph St., 12th Floor
Chicago, IL 60601                             Chicago, IL 60601
(312) 814-719                                       (312) 814-2587

July 10, 2017